# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

CASSANDRA LEWIS,                          :

    Plaintiff,                        :

  vs.                                     :

CAROLYN W. COLVIN,                        :
Acting Commissioner of the Social
Security Administration,                  :

    Defendant.                        :

Case No. 3:12cv00383

District Judge Walter Herbert Rice
Chief Magistrate Judge Sharon L. Ovington

# REPORT AND RECOMMENDATIONS[1]

## I.    Introduction

Plaintiff Cassandra Lewis returns to this Court for the second time challenging the Social Security Administration's most recent decision to deny, in part, her applications for Supplemental Security Income and Disability Insurance Benefits. As a result of her first foray in this Court, her case was remanded to the Social Security Administration for further proceedings. (Tr. 810-25). On remand, Administrative Law Judge (ALJ) Thomas R. McNichols II partially granted Plaintiff's application for Supplemental Security Income, finding that she was under a benefits-qualifying disability starting on April 1, 2008. ALJ McNichols otherwise denied Plaintiff's applications. (Tr. 781-83).

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

Plaintiff now challenges ALJ McNichols' conclusion that she was not under a disability before April 1, 2008. The case is before the Court upon Plaintiff's Statement of Errors (Doc. #7), the Acting Commissioner's Opposition To Statement of Errors (Doc. #9), Plaintiff's Reply (Doc. #10), the administrative record, and the record as a whole. This Court has jurisdiction to review ALJ McNichols' April 10, 2010 decision. *See* 42 U.S.C. §§405(g), 1383(c)(3).

Plaintiff seeks an Order remanding this matter to the Social Security Administration for payment of benefits or "for proper consideration of the treating source opinions ...." (Doc. #7, PageID at 89). The Commissioner contends that the ALJ's decision should be affirmed as it is supported by substantial evidence and was decided by the proper legal standards.

## II.    **"Disability" Defined**

To be eligible for Supplemental Security Income (SSI) or Disability Insurance Benefits (DIB) a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same for both SSI and DIB. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). A "disability" consists only of physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant (1) from performing his or her past job and (2) from engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70.

The applicant for benefits bears the ultimate burden of establishing that he or she is under a disability. *See Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997); *see Wyatt v. Secretary of Health and Human Services*, 974 F.2d 680, 683 (6th Cir. 1992); *see also Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).

### III.  Background

#### A.  Vocational Background and Health Problems

Plaintiff has worked over the years as a cashier, a waitress, a factory worker, and a banquet helper. (Tr. 30, 84). She has at least a high school education. (Tr. 30, 133).

Plaintiff applied for SSI and DIB on December 12, 2003, asserting that she was under a disability beginning on June 1, 2003.[2] She was under age 50 at that time and was consequently considered to be a "younger" person under Social Security Regulations. 20 C.F.R. §§ 404.1563(c), 416.963(c).[3] On the date of ALJ McNichols' April 2010 decision, Plaintiff was still considered a "younger" person. (Tr. 781).

#### B.  Plaintiff's Testimony

The ALJ's decision accurately describes Plaintiff's testimony during the administrative hearing as follows:

> The claimant testified that she stands 5 feet, 5 inches tall and weighs 200 pounds. 170 pounds used to be her normal weight. She attributed the weight

---

[2]  Plaintiff later filed for DIB in August 2007. The ALJ considered all three applications in his April 2010 decision. (Tr. 768).

[3]  The remaining citations will identify the pertinent DIB regulations with full knowledge of the corresponding SSI regulations.

3

gain to her medication. She is married and lives with her disabled husband and three children who range in age from 12-to-15 years old. She related that she last worked in December 2003 at either a McDonalds or a Kroger grocery, but she could not stand to be on her feet or near the heat from a stove. She worked just one day at each of these businesses. She has had physical therapy for her back and taken medication for arthritic pain. Surgery was recommended to her, but she did not pursue an operation. She is unable to raise her right arm above shoulder level. She is taking medication for the pain in her upper extremities. Her use of an inhaler for COPD [Chronic Obstructive Pulmonary Disease] has helped. She has placed an order for a breathing machine. She said that she stopped smoking four years ago. The cartilage in her knee has worn down, and she takes medication for that also. She lost vision in her right eye when hot greased spilled in it when she was six years old. She suffers from a bipolar condition and depression. She is subject to mood swings and problems with her memory and concentration.

She has been in counseling at DayMont and Advanced Therapeutic Services. She complained of a dry mouth and shaking due to the effects of her medication. The claimant testified that her pain "comes and goes," but generally is of an intensity of 7/10. Pain travels into her "good" shoulder and into her "good" knee and down her left leg. Medication helps to relieve the pain some. She is most comfortable when she is sitting. She is able to sleep at night. She can walk one block. She can stand 10-15 minutes and sit 30 minutes, each at a time. She can use her arms, hands, and fingers. She can lift 3-to-4 pounds or a gallon of milk. She can climb steps. She is able to ride the bus. She does not feel she could do past work because she would have to be on her feet too long. When asked if she could do a sedentary job, she replied that she would still have to be able to move around. At home, she is able to wash dishes, sweep, mop, and vacuum, but not very often. Her son does the laundry and goes to the grocery. She does not cook or make the beds. She does not go to church. Her daughters come to visit her, but she does not visit friends. She has no hobbies, plays no sports, sees no movies, but does walk a little. She does no yard work or gardening. She has taken no trips. She denied any alcohol consumption since 2004. Her last use of cocaine was in June 2009. She denied being arrested on drug-or alcohol-related charges. Her appetite is "up and down." She can feed, dress, and groom herself.

The claimant testified further that she typically rises at 7 am, gets her children on the (school) bus, drinks coffee, and then goes back to bed. She stays in bed until her children return from school. She then cooks dinner and watches

4

television in bed. She does not do much reading. She does not use a computer. At night, she watches television with her children and may help them with their homework. She goes to their football games. She and her husband help each other to shower.

In response to an inquiry by her attorney, the claimant testified that since her husband had a hip replaced, she helps him get out of the tub. She said that the pain in her back, shoulder and knee was the same, but then she said that the pain in her knee was worst. However, if she is sitting, the pain is not in her knee. If she is able to lie down in her home, the pain stops. She is more depressed when she is in pain. She acknowledged that she went without mental health therapy for six months. She noted that she could not stay at Advanced Therapeutic Services because she lacked insurance. She said that her right knee pain could be as bad as 10/10, but if she would lay down the knee pain would drop to 3-4/10. If she lifts her arm, the shoulder pain is 7-8/10, but otherwise the shoulder pain is 3-4/10. She felt she could not do a sedentary job because of concentration problems. She goes to bed at 8 pm and sleeps for six hours. She wakes up three or four times during the night and feels tired the next day. She stated that, due to depression, she would not be able to get up for work, and she would be let go. She described her use of cocaine in June 2009 as a relapse, and she denied any further use of cocaine since then. She has had urine tests for drugs off and on since 2005. She goes to the grocery once a month. She now said that she does not go to football games because she does not want to go out of the house. When she was younger she was around people, but now she does not want to be around people. She cannot clean like she used to do, and she cannot bend or push a vacuum (but then added she may occasionally try).

(Tr. 770-71).

### C. Plaintiff's Treating Medical Sources

Plaintiff relies, in part, on the opinions provided by her treating medical sources: Dr. Aggarwal and Dr. Martinez.

### 1.
### Dr. Aggarwal – Primary Care

In February 2006, Dr. Aggarwal noted on a Basic Medical form that Plaintiff was

unemployable due to her medical conditions. He[4] identified Plaintiff's conditions as depression and degenerative disc disease. (Tr. 480-81). Her health status was "poor but stable." (Tr. 480).

Dr. Aggarwal completed a Narrative Questionnaire in October 2006. By then, Plaintiff had been Dr. Aggarwal's patient for nearly 19 years (since November 17, 1987). (Tr. 583). Dr. Aggarwal diagnosed Plaintiff with alcoholism, depression, COPD, patellofemoral pain in her right knee, chronic right-shoulder pain, and L4-L5 disc syndrome. *Id*. Dr. Aggarwal noted that he treated Plaintiff with "different medicines," and he referred Plaintiff to "rehab" and a psychiatrist and an orthopedic surgeon for consultation. (Tr. 584). Dr. Aggarwal opined, "Due to depression and alcoholism, [Plaintiff] is completely unable to work in any competitive environment...," and due to "multiple joint problems and pain, [Plaintiff] is unable to do any work requiring significant physical activity." *Id*.

In October 2006, Dr. Aggarwal also completed a Residual Functional Capacity Questionnaire indicating that Plaintiff could, per day, sit for a maximum of 6 hours, stand for a maximum of 2 hours, and walk for a maximum of 1 hour. (Tr. 586). But Plaintiff could not sustain these activities on a full-time basis (8 hours per day, 40 hours per week, and 50-51 weeks per year). *Id*.

Dr. Aggarwal believed that Plaintiff could occasionally lift and carry a maximum of

---

[4] According to two internet sources, Rajendra, as in Dr. Rejendra K. Aggarwal, is a unisex name but more commonly male. *See* http://genderchecker.com; *see also* http://www.gpeters.com/names. Apologies to Dr. Aggarwal if the use of the pronoun "he" is incorrect.

10 pounds, and Dr. Aggarwal noted numerous other physical limitations, such as Plaintiff's inability to use her feet and legs for repetitive movements and her inability to reach above both her right and left shoulders. (Tr. 587-88). As to Plaintiff's rest requirements, Dr. Aggarwal opined that she needed 10 minutes of rest per hour. (Tr. 589). Dr. Aggarwal also opined that Plaintiff could be expected to be absent 5 or more days per month due to exacerbation of her medical conditions. *Id*.

**2.**
**Dr. Martinez – Orthopedist**

Dr. Martinez, an orthopedist, first saw Plaintiff in December 2003 (upon referral from Dr. Aggarwal). (Tr. 196). Plaintiff reported to Dr. Martinez that she dislocated her shoulder about a year or a year-and-a-half earlier. She also told Dr. Martinez that she was advised to undergo surgery at that time, but she lacked the financial means to do so. Her shoulder continued to trouble her when she saw Dr. Martinez because it would go "out of place ...." *Id*.

Upon examination, Dr. Martinez found that Plaintiff had an obvious grade 4 acromioclavicular-joint separation with pain on abduction with external rotation "to the max." (Tr. 196). Dr. Martinez noted that x-rays did not reveal the problem, and he opined that nonsurgical means would not resolve the injury "this late after the origin of separation." *Id*. Dr. Martinez referred Plaintiff for possible right-shoulder surgery.

A May 2006 x-ray revealed that Plaintiff's "lumbosacral spine is considered normal." (Tr. 432) (capitalization omitted). An EMG report in May 2006 concluded, "Normal study.

7

Today's EMG of [right-lower extremities] including lumbar paraspinals failed to reveal any electrophysiological evidence of lumbar radiculopathy. There is no evidence of generalized peripheral neuropathy, lumbosacral plexopathy, myopathy or motor neuron disease on today's examination." (Tr. 433).

In June 2006, Dr. Martinez wrote that despite negative EMG studies, "there is no question that this patient does have an L4/5 disc syndrome on the right side." (Tr. 1060). He indicated that physical therapy had helped with her pain, and he planned to reevaluate Plaintiff when she completed physical therapy before ordering MRI studies. *Id*.

Dr. Martinez answered a Narrative Questionnaire in November 2006. He noted that he had treated Plaintiff since May 2006 for back pain radiating to her lower extremity, for tingling between her big and second toes, and for pain in her right knee. (Tr. 670). He diagnosed Plaintiff with right disc syndrome at L4-L5 as indicated by her limitation of lumbar-spine motion, positive Valsalva's maneuver, and positive straight-leg raising. *Id*. She was also unable to walk on the tips of her toes or on her heals, and she had right patellofemoral pain. *Id*. Dr. Martinez explained that he had treated Plaintiff by referring her to physical therapy, with steroid injections to her right knee, and with Naproxyn. (Tr. 671).

Dr. Martinez also completed a Residual Functional Capacities Questionnaire in November 2006. He opined that Plaintiff could sit for a total of 8 hours, stand for a total of 2 hours, and walk for a total of 2 hours (not continuous) during an 8-hour workday. (Tr. 673). If Plaintiff had an opportunity to alternate positions, Dr. Martinez believed that Plaintiff's

full capacity to sit, stand, and walk combined to a total of 4 hours. (Tr. 673). He further

opined that Plaintiff could not comfortably sustain these activities on a full-time basis. *Id*.

Dr. Martinez limited Plaintiff to lifting less than 10 pounds occasionally, specifying

(in the Narrative Questionnaire) that Plaintiff could lift or carry no more than 5 pounds. (Tr.

673, 671). According to Dr. Martinez, Plaintiff could not bend, squat, kneel, or climb stairs,

and she could only occasionally reach above shoulder level with either arm. (Tr. 675).

Plaintiff needed a 20-minute rest break once an hour, and she could be expected to miss 3-4

days of work per month due to exacerbation of her medical conditions. (Tr. 676).

In April 2007, Dr. Martinez documented Plaintiff's office visit as follows:

> The patient is here for the same problem that she was reevaluated here before –
> low back pain.... The patient today has marked spasticity in the paraspinal
> muscles on the right side of her lumbar spine area. This is limiting the motion
> of the patient in all directions. The patient, however, has straight leg raising
> positivity, both sitting up and lying down. The hip motion was normal. No
> sensory deficit present.
>
> We will do some blood work and physical therapy, and reevaluation upon
> completion of the physical therapy. The patient continues to exhibit signs of
> radiculopathy; however, MRI studies and EMG study have not proven any disc
> problems in this patient.

(Tr. 1056).

In May 2008, in a memo to the Job Center (Department of Job & Family Services),

Dr. Martinez reported that Plaintiff was unable to return to work and needed surgery on her

right knee, right shoulder, and lumbar spine. He noted that she "cannot get surgeries without

insurance or medicaid." (Tr. 1055).

## IV.     Administrative Proceedings and Judicial Review

### A.        The Sequential Evaluation

Social Security Regulations require ALJs to resolve a disability claim through a five-Step sequential evaluation of the evidence. *See* 20 C.F.R. §404.1520(a)(4). Although a dispositive finding at any Step terminates the ALJ's review, *see also Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.      Is the claimant engaged in substantial gainful activity?

2.      Does the claimant suffer from one or more severe impairments?

3.      Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4.      Considering the claimant's residual functional capacity[5], can the claimant perform his or her past relevant work?

5.      Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Gayheart v. Commissioner of Social Sec.*, 710 F.3d 365, 374-75 (6th Cir. 2013).

---

[5] A Social Security applicant's residual functional capacity is the most he or she can do, not the least, after considering the existing physical and mental limitations. *See* 20 C.F.R. § 404.1545(a); *see also* Social Security Ruling 96–8p, 1996WL 374184.

### B.     ALJ McNichols' April 20, 2010 Decision

As noted previously, ALJ McNichols concluded that Plaintiff was under a disability beginning on April 1, 2008, but not before. His pertinent sequential findings began at Step 2 where he concluded that since Plaintiff's asserted disability onset date (June 1, 2003), her severe impairments consisted of "1) intermittent low back, right shoulder, and right knee pain; 2) COPD (mild); 3) bipolar disorder; and 4) a history of alcohol and cocaine dependence, reported to be in current remission." (Tr. 772).

At Step 3, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or equaled the criteria in the Commissioner's Listing of Impairments.  (Tr. 774).

At Step 4, the ALJ concluded:

> [P]rior to April 1, 2008, the date the claimant became disabled, the claimant had the residual functional capacity ... to perform sedentary work ... subject to: 1) alternation of sitting and standing at 30-minute intervals; 2) occasional work above shoulder level on the right; 3) no repetitive use of foot controls on the right; 4) no bending, squatting, or kneeling; 5) no climbing of ropes, ladders, or scaffolds; 6) no exposure to irritants; 7) no exposure to hazards; 8) simple one- or two-step tasks requiring little, if any, concentration; 9) limited contact with co-workers and supervisors; and 10) no direct dealing with the general public. By definition, sedentary work ordinarily requires mostly sitting, and the ability to lift small amounts of weight up to 10 pounds.

(Tr. 775-76). The ALJ also found at Step 4 that Plaintiff had been unable to perform her past relevant work from her alleged disability onset date. (Tr. 781).

At Step 5, the ALJ concluded that before April 1, 2008, a significant number of jobs existed in the national economy that Plaintiff could perform, but after that date, jobs did not

11

exist in significant number in the national economy that Plaintiff could perform. This, in turn, meant that Plaintiff was not under a disability and not eligible for SSI or DIB before April 1, 2008.[6] (Tr. 781-83).

### C.   <u>Judicial Review</u>

Judicial review of an ALJ's decision proceeds along two lines: " whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Social Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Social Sec.*, 478 F3d 742, 745-46 (6th Cir. 2007).

The substantial-evidence review does not ask whether the Court agrees or disagrees with the ALJ's factual findings or whether the administrative record contains evidence contrary to those factual findings. *Rogers v. Comm'r of Social Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r of Social Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Social Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance..." *Rogers*, 486 F.3d at 241.

The second line of judicial inquiry – reviewing the ALJ's legal criteria for correctness

---

[6] Addressing Plaintiff's ineligibility for DIB, ALJ McNichols specifically found that she was not under a disability at any time through her date last insured, June 30, 2007. (Tr. 782-83).

– may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Social Sec*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746 and citing *Wilson v. Comm'r of Social Sec*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

**V.     Discussion**

**A.     Treating Medical Sources**

Plaintiff contends that the ALJ erred in not placing controlling or great weight on the opinions of Drs. Aggarwal and Martinez.  The Commissioner maintains that the ALJ gave proper reasons for why he placed less weight on the opinions of Drs. Agarrwal and Martinez. The Commissioner further argues that substantial evidence supports the ALJ's reasons for discounting these physicians' opinions.

Social Security Regulations "impose certain standards on the treatment of medical source evidence..., " *Gayheart v. Comm'r of Soc. Sec*., 710 F.3d 365, 375 (6th Cir. 2013) (quoting *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011)), including the standards set by the treating physician rule. Under the treating physician rule, a treating medical source's opinion may be given controlling weight if it is both well supported by medically acceptable data and not inconsistent with other substantial evidence of record. *Id*. at 376 (citing 20

13

C.F.R. §404.1527(c)(2)); *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). When the ALJ declines to apply controlling weight under the treating physician rule, he or she must continue to weigh the treating source's opinion "based on the length, frequency, nature, and extent of the treatment relationship, as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence." *Gayheart*, 710 F.3d at 376 (citing 20 C.F.R. § 404.1527(c)(2)-(6)); *see Wilson,* 378 F.3d at 544.

Unlike treating physicians, "opinions from nontreating and nonexamining sources are never assessed for 'controlling weight.' The Commissioner instead weighs these opinions based on the examining relationship (or lack thereof), specialization, consistency, and supportability, but only if a treating-source opinion is not deemed controlling. Other facts 'which tend to support or contradict the opinion' may be considered in assessing any type of medical opinion." *Gayheart*, 710 F.3d at 376 (citing 20 C.F.R. §404.1527(c)(6)).

## B. <u>Analysis</u>

The ALJ applied the correct legal criteria during his evaluation of the opinions provided by Plaintiff's treating medical sources – Drs. Aggarwal and Martinez. (Tr. 777-78). Plaintiff acknowledges this. (Doc. #7, PageId at 75). Consequently, judicial review of the ALJ's decision turns to whether substantial evidence supports his reasons for rejecting the opinions provided by these two physicians. *See Bass v. Comm'r of Soc. Sec.*, 499 F.3d 506, 509-12 (6th Cir. 2007); *see also* Social Security Ruling 96-2p, 1996 WL 374188 at *3-*4.

The ALJ weighed Dr. Aggarwal's opinions as follows:

> [I]n October 2006, Dr. Aggarwal ... filled out a questionnaire ... wherein it was indicated that the claimant could not comfortably sustain a full-time job, that she was limited to part-time sedentary work, that she would need one 10-minute rest per hours, and that she would be expected to be absent from work for five or more days a month. However, Dr. Aggarwal appears to justify these marked physical limitations on the basis of pain symptoms reported by the claimant, as well as her history of depression and substance abuse. Dr. Aggarwal provided little, if any, detailed medical findings to support her pessimistic viewpoint. Dr. Aggarwal['s opinion] is given no controlling weight as it is not well-supported by medically-acceptable clinical and laboratory diagnostic techniques and is not consistent with other substantial evidence (such as documented diagnostic studies and the detailed physical findings reported by Dr. Danopolus). Despite her status as a general treating source, Dr. Aggarwal's opinion is given no deferential weight as it scores poorly in terms of supportability, consistency, specialization, and other relevant factors, such as the claimant's history of substance abuse.

(Tr. 778)(citation omitted). Next, the ALJ correctly noted that "it is clear that under Public Law 104-121, a substance abuse addiction disorder cannot serve as the basis for entitlement/eligibility to benefits as a contributing factor material to finding of disability."[7] (Tr. 778). The ALJ reasoned, "If the claimant [was] sober, she could have been expected to sustain mild sedentary work featuring simple tasks and limited personal contacts prior to April 2008, and Dr. Aggarwal's opinion is given little weight to the extent that it is inconsistent with that conclusion." *Id*.

Rejecting Dr. Martinez's opinions, the ALJ explained:

> In November 2006, Dr. Martinez, another treating source who has seen the claimant for orthopedic problems, filled out a questionnaire form for counsel wherein it was declared that the claimant could not comfortably

---

[7] This exclusion is codified at 42 U.S.C. §423(d)(2).

15

sustain a full-time job, that she was limited to part-time sedentary work, that she would require one 20-minute rest period per hour, and that she would be expected to be absent from work three-four days a month. However, while Dr. Martinez'[s] opinion appears to be based primarily on the subjective pain complaints of the claimant, the claimant's subjective allegations must be viewed as excessive in light of the objective medical findings described in the record. There is no consistent evidence of nerve root compression or peripheral neuropathy, weakness, or objectively-documented loss of mobility. The opinion of Dr[.] Martinez then is given no controlling weight as it is not well-supported by medically-acceptable clinical and laboratory diagnostic techniques and is not consistent with other substantial evidence. The opinion of Dr. Martinez is given no deferential weight as it fares poorly in terms of supportability, consistency, and other factors such as the descriptions of the claimant's activity level (as noted in Dr. Flexman's report). Little weight is assigned to Dr. Martinez'[s] opinion.

(Tr. 778) (internal citation omitted).

The ALJ's reasons for rejecting Dr. Aggarwal's opinions are not supported by substantial evidence. Although Dr. Aggarwal appears to partially rely on Plaintiff's reports of pain, Dr. Aggarwal also indicates that Plaintiff has been diagnosed with patellofemoral syndrome in the right knee, L4-L5 right disc syndrome, and an AC separation in her right shoulder. In this manner, Dr. Aggarwal provided some information about the likely etiology of Plaintiff's pain complaints. (Tr. 585). Dr. Aggarwal was well informed about the likely etiology of Plaintiff's pain, given that he had treated Plaintiff for close to 19 years (since November 17, 1987) by the date he examined Plaintiff in October 1986 evaluation. (Tr. 583). This extensive period of treatment certainly favors Dr. Aggarwal's opinion because it corresponds with the attributes of the "treatment relationship" factor described in the Regulations, which explain to claimants:

16

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairments and may bring a unique perspective to medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations ....

20 C.F.R. §1527(d)(2) (2010).

Additionally, at times in 2004 and 2005, Plaintiff saw Dr. Aggarwal on a monthly basis. (Tr. 294-300). For treatment, Dr. Aggarwal prescribed medications and referred Plaintiff to rehabilitation and to a psychiatrist. (Tr. 584).

The ALJ's rejection of Dr. Aggarwal's opinions did not provide good reasons in support of his conclusion that "Dr. Aggarwal's opinion is given no deferential weight as it scores poorly in terms of supportability, consistency, specialization, and other relevant factors, such as the history of substance abuse." (Tr. 778). With the exception of a prior reference to Dr. Danopolus's findings, the ALJ did not point to evidence in the record to explain these conclusions. *See id*. The ALJ's explanation that he did not credit Dr. Aggarwal's opinion that depression and alcoholism rendered Plaintiff "unable to work any competitive environment" (Tr. 584), says nothing about Plaintiff's physical impairments, which Dr. Aggarwal also cited in support of his opinion. *Id*.

Further, Dr. Aggarwal referred Plaintiff to orthopedic specialist Dr. Martinez (Tr. 196, 584) for treatment and objective testing. Dr. Aggarwal presumably relied on the results of this referral and the testing to diagnose Plaintiff with the aforementioned physical impairments. As for the "history of depression and substance abuse," at the time of Dr.

17

Aggarwal's evaluation Plaintiff had been diagnosed with and was being treated for depression (Tr. 658-62), facts tending to support reliance upon those conditions when assessing Plaintiff's work abilities. Although Plaintiff acknowledges that it is unclear to what degree Dr. Aggarwal relied on Plaintiff's history of alcoholism, she correctly points out that Dr. Aggarwal completed a Welfare Basic Medical form in which he noted that Plaintiff was "unemployable," and he premised this conclusion solely on diagnoses of depression and degenerative disc disease, making no reference to alcoholism. (Tr. 480-81).

The Commissioner argues, "[t]he ALJ also noted that Dr. Aggarwal provided little detailed medical findings to support his opinion." (Doc. #9, PageID at 99).  However, as noted above, Dr. Aggarwal indicated that Plaintiff has been diagnosed with patellofemoral syndrome in the right knee, L4-L5 right disc syndrome, and an AC separation in her right shoulder.  (Tr. 585). The Commissioner further indicates, "[t]he ALJ properly noted that Dr. Aggarwal's opinion was inconsistent with other substantial evidence such as the documented diagnostic studies and the detailed results of a physical examination by Dr. Damian Danopolus."  (Doc. #9, PageID at 99). But, the ALJ does not refer to these diagnostic studies. There are, however, several "normal" objective test results in the file: a normal x-ray of the lumbar spine (Tr. 432), a normal EMG study of the right low extremity and lumbar paraspinals (Tr. 433), and normal knee x-rays. (Tr. 531). Still, additional imaging supported Dr. Aggarwal's report.  For example, an x-ray of the shoulder revealed grade IV AC joint separation (Tr. 196), and a chest x-ray revealed degenerative changes of the dorsal spine (Tr.

18

566).  Also, Dr. Martinez – an orthopedic specialist – indicated that despite some of the normal testing of the lumbar spine, there was "no question" she had an L4/L5 disc syndrome on the right. (Tr. 1060). And, even though some test results were normal, Dr. Martinez wanted Plaintiff to undergo surgery on her right knee, right shoulder, and low back, noting that she "could not get surgeries done without insurance or medicaid." (Tr. 1055). Additionally, a host of observations on physical examination by Dr. Martinez and physical therapists is consistent with the limitations described by Dr. Aggarwal. (Tr. 196, 435, 531, 581, 1055, 1056, 1060).

The Commissioner points out, "the ALJ properly noted Dr. Martinez's opinion appeared to be primarily based on Plaintiff's subjective allegations." (Doc. #9, Page ID at 97).  Yet, Dr. Martinez specifically referred tp observations he made when physically examining Plaintiff that led to his diagnoses and limitations:  limitation of movement in the lumbar spine, positive Valsalva's maneuver, positive straight-leg-raising tests, and an inability to heel or toe walk. These observations, as well as others by Dr. Martinez (Tr. 196, 435, 531, 1056), amount to medically acceptable data supporting his opinions. The Commissioner further points to the ALJ's conclusion that Dr. Martinez's opinion "fared poorly in terms of supportablity, consistency, and the descriptions of Plaintiff's activity level as noted in Dr. Flexman's report." (Doc. # 9, PageID at 97).  But, Dr. Martinez's reports are consistent with Dr. Aggarwal's treatment notes, diagnoses, and reports. The only evidence inconsistent with his report is the opinions by consultative examiners, who had one

19

opportunity to examine Plaintiff.  And Dr. Danopolus' did not opine that Plaintiff had any specific work abilities or limitations. He instead generally concluded, "[Plaintiff's] ability to do any work related activities is affected in a negative way from her early emphysema and her legally blind right eye plus arthralgias in different joints of her body."  (Tr. 1009).

In sum, Plaintiff correctly maintains that the ALJ's reasoning and conclusions under the applicable legal standards are not supported by substantial evidence because the evidence is insufficient to convince "a reasonable mind" to "accept the relevant evidence as adequate to support ...," *Blakley*, 581 F.3d at 406 (internal quotations and citation omitted), the ALJ's rejection of Dr. Aggarwal's and Dr. Martinez's opinions.

Accordingly, Plaintiff's Statement of Errors is well taken.[8]

## VI.    <u>Reversal And Remand For Benefits</u>

If the ALJ failed to apply the correct legal standards or his factual conclusions are not supported by substantial evidence, the Court must decide whether to remand the case for further proceedings or to reverse and order an award of benefits. Under Sentence Four of 42 U.S.C. §405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Remand is appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of

---

[8] In light of the above review, and the resulting need for remand of this case, an analysis of the parties' remaining arguments concerning the ALJ's assessment of Plaintiff's mental work abilities is unwarranted.

impairments, or failed to make a credibility finding. *Faucher v. Sec'y of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994).

A reversal of the ALJ's decision and a judicial award of benefits is warranted in the present case, because the evidence of disability is strong while contrary evidence is weak. *See Faucher*, 17 F.3d at 176. The opinions provided by Plaintiff's treating specialist Dr. Martinez and her very long-term treating physician Dr. Aggarwal, are opposed mainly by the opinions of Dr. Albert, who examined the record in March 2008. (Tr. 1043-53). At that time, however, Dr. Albert did not have before him the opinions provided by Plaintiff's treating physicians (Tr. 1052) and, consequently, he did not have the benefit of Dr. Martinez's expert orthopedic opinion or the opinion provided by Plaintiff's very long-term treating physician, Dr. Aggarwal. Indeed, the ALJ did not fully credit Dr. Albert's opinion that Plaintiff could lift up to 50 pounds occasionally and 25 pounds frequently, during an eight-hour workday. (Tr. 776, 1047). In addition, there is no indication in the ALJ's decision that he considered Dr. Albert's opinion under any regulatory factor beyond being supported by Dr. Danopolus' findings. (Tr. 776-77). Social Security regulations require more:

> The Regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker. For example, the opinions of physicians or psychologists who do not have a treatment relationship with the individual are weighed by stricter standards, based to a greater degree on medical evidence, qualifications, and explanations for the opinions, than are required of treating sources.
>
> For this reason, the opinions of State agency medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as they are supported by evidence in the case record,

considering such factors as the supportability of the opinion in the evidence including any evidence received at the administrative law judge and Appeals Councils levels that was not before the State agency, the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion provided by the State agency medical or psychological consultant or other program physician or psychologist.  The adjudicator must also consider all other facts that could have a bearing on the weight to which an opinion is entitled, including any specialization of the State agency medical or psychological consultant.

Social Security Ruling 96-6p, 1996 WL 374180 at *2.

Considering Plaintiff's medical records, including the credible and controlling findings and opinions of Drs. Martinez and Aggarwal, the evidence of disability is overwhelming or is, at a minimum, strong while contrary evidence is weak.

Accordingly, an Order remanding this case for benefits is warranted. *See Faucher*, 17 F.3d at 176; *see also Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994).

## IT THEREFORE IS RECOMMENDED THAT:

1.  The Commissioner's final non-disability decision be reversed;

2.  Plaintiff Cassandra Lewis' case be REMANDED to the Social Security Administration (a) for payment of Disability Insurance Benefits consistent with the Social Security Act from December 21, 2005 (the date on which she became abstinent from drugs and alcohol) to present; and (b) for payment of Supplemental Security Income consistent with the Social Security Act from December 21, 2005 to March 31, 2008 (the day before the date on which the Social Security Administration has previously found her to be under a benefits-qualifying disability and for which she has already received SSI benefits); and

3.  The case be terminated on the docket of this Court.

January 29, 2014          s/Sharon L. Ovington
                                  Sharon L. Ovington
                          Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).